Tony MORGAN, Plaintiff,

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, et al.,**
**Defendants.**

**No. CIV. A. 98–01397ESH.**

United States District Court,
District of Columbia.

Oct. 23, 2001.

David Branch, Washington, DC, for Plaintiff.

Robert John Smith, Nancy Rich Kuhn, Jennifer Lynn Kocher, Morgan, Lewis & Bockius, L.L.P., Washington, DC, Howard S. Lindenberg, Dinae M. Ennist, McLean, VA, for Defendants.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff Tony Morgan, a black male, was employed by the Federal Loan Home Mortgage Corporation ("Freddie Mac") from January 1995 to March 1996. In anticipation of and after his termination on March 31, 1996, plaintiff applied for a number of positions with Freddie Mac but was not hired. On June 3, 1998, plaintiff filed a complaint, alleging discriminatory and retaliatory refusals to hire in violation of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the District of Columbia Human Rights Act, D.C.Code. § 2–1401.01 et seq. ("DCHRA"). Defendants have moved for summary judgment on the grounds that, inter alia, the DCHRA claims are time-barred; plaintiff released any claims arising prior to April 7, 1996; and plaintiff has failed to present sufficient facts to establish a prima facie case of discrimination or retaliation. As explained more fully below, this Court concludes that defendants' motion should be granted.

### BACKGROUND

Plaintiff was employed as Director, Corporate Relations–Executive by Freddie Mac at its McLean, Virginia headquarters from January 17, 1995 to March 31, 1996. Freddie Mac terminated his employment on March 31, 1996, as a result of a reduction-in-force. In exchange for six additional months of severance pay and outplacement assistance, plaintiff executed a "Release of All Claims," effective April 7, 1996 (the "Release"). Prior to and after executing the Release, plaintiff expressed interest in and applied for a number of positions at Freddie Mac, but was unsuccessful in his attempts to obtain re-employment.

Based on these refusals to hire, on December 11, 1996, plaintiff cross-filed discrimination complaints with the Fairfax County Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC complaint alleged racial discrimination in his non-selection for a variety of positions. On January 10, 1997, plaintiff filed a complaint with the D.C. Department of Human

Rights, alleging discrimination on the basis of his Democratic Party affiliation in his non-selection for the positions of Director, Government Relations and Director, Industry Relations. After filing these complaints, plaintiff applied for a number of additional positions at Freddie Mac, but was not offered employment.

On June 3, 1998, plaintiff brought a class action lawsuit alleging, *inter alia*, harassment based on race and discriminatory and retaliatory refusal to hire under Title VII, Section 1981, and the DCHRA. The case was originally assigned to the Honorable Thomas Penfield Jackson. After months of discovery regarding the class claims, a statement was filed on February 1, 1999, indicating that "plaintiff's counsel have determined not to proceed at this time with moving to certify a class under Rule 23...." Thereafter, the case was reassigned to the undersigned. On November 9, 2000, this Court granted defendants' motion to dismiss the counts against defendants Leland Brendsel and John Gibbons. Following many months of protracted discovery disputes, which were ably managed by Magistrate Judge John Facciola, plaintiff's counsel moved to withdraw based on irreconcilable differences with plaintiff. This motion was ultimately granted on January 25, 2001. This withdrawal necessitated further delays in discovery so as to permit plaintiff to find new counsel. With the appearance of new counsel, discovery was finally completed and the case is now ripe for summary judgment consideration.

Despite this tortured history, the issues have now been narrowed considerably. As noted, there are no class claims. There is no issue as to the validity (as opposed to the interpretation) of the Release signed by the plaintiff, and thus, plaintiff's claims as to discrimination and harassment during his tenure at Freddie Mac are no longer at issue. Two of the three individual defendants have been dismissed, and plaintiff has conceded that he is no longer pursuing any claims regarding his nonselection for seven out of the fifteen positions that had been included in his complaint.[1]

Left for consideration are claims relating to eight positions, four of which plaintiff applied for but was rejected prior to signing a Release. The only remaining defendants are Freddie Mac and its Vice President of Government and Industry Relations, Mitchell Delk. The legal claims include discriminatory refusal to hire on the basis of race and political affiliation and retaliation in violation of Title VII (Count I), Section 1981 (Count II) and the DCHRA (Count III).

Defendants have moved for summary judgment on all remaining claims on the grounds that: (1) plaintiff's DCHRA claims are time-barred; (2) the Release bars those claims concerning non-selections occurring prior to April 7, 1996; and (3) plaintiff has failed to establish a prima facie case of discrimination or retaliation on the grounds that the positions at issue were either not available, were never filled, or plaintiff lacked the necessary qualifications for the position.

## ANALYSIS

### I. Summary Judgment Standard

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the

---

1. Plaintiff no longer claims discrimination or retaliation with respect to his non-selection for the following positions: Director, Expanding Markets, an international position, Account Executive, Director, Industry Relations (1997), Director, Financial Engineering, Director, Derivatives Management, Director, Securities Marketing (1998). (Plaintiff's Opposition and Memorandum in Support of Opposition to Defendants' Motion for Summary Judgment, at 1, n. 1) (hereinafter "Pl.'s Opp.").

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989).

The nonmovant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant must provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1241 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of

[his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson,* 1998 WL 164780 at *3 (D.D.C. March 31, 1998), *aff'd,* 1999 WL 825425 (D.C.Cir. Sept. 27, 1999) (citation omitted). In addition, Local Civil Rule 7.1(h) provides that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the part of the record relied on to support the statement."

■ Despite these principles of law and the requirements of the local rules, "Plaintiff's Statement of Genuine Issues in Dispute" (hereinafter "Plaintiff's Statement") is woefully deficient in many respects. Plaintiff's Statement fails to controvert most of the facts set forth by defendants, including material facts relating to the nonavailability of positions for which plaintiff applied and was refused employment.[2] Under Rule 7.1(h), "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Even where facts are disputed, a careful review of the record citations reveals that there is a lack of support for plaintiff's assertions.[3]

---

**2.** For example, regarding plaintiff's nonselection as Director, Industry Relations, plaintiff provides no evidence to contest defendants' assertion that a vacancy for the position was never posted and that the functions of the position were transferred out of Mitchell Delk's department (Defs.' Statement ¶¶ 35–36); regarding the Director, Government Relations position, plaintiff does not dispute defendants' assertion that there was no vacancy when plaintiff discussed the position with Delk (*Id.* at ¶¶ 40–41); and regarding the Director, Business Support position, plaintiff

does not dispute that the hiring manager suspended recruitment for the position before plaintiff applied. (*Id.* at ¶ 143).

**3.** For example, plaintiff claims that the position Director, Business Support, "could very well" have been renamed Director, Strategic Planning and offered to another candidate. (Pl.'s Opp. at 32.) However, a review of the Freddie Mac documents and deposition statements that plaintiff cites, reveals that his claim rests not on evidence, but on pure conjecture. *See* pp. 14–15, *infra.*

Plaintiff's Statement is also deficient insofar as reference is made to alleged facts for which a deposition is cited without any specific page reference.[4] The burden is on the parties, not on the court, to "identify the pertinent parts of the record, to isolate the facts that are deemed to be material, and to distinguish those facts which are disputed from those that are undisputed." *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.Cir.1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); *see also Jackson v. Finnegan, Henderson, Farabow, Garrett, & Dunner*, 101 F.3d 145, 153 (D.C.Cir.1996) (noting that the burden is on counsel, not the court, to "winnow the wheat from the chaff"). Furthermore, in support of his Statement, plaintiff often relies on his own self-serving Declaration, much of which is peppered with conclusory statements regarding his superior qualifications.[5]

As explained more fully below, when the uncontroverted evidence is considered, it becomes readily apparent that plaintiff's DCHRA claims are time barred, he has released any possible claim as to four of the positions at issue, since the refusal to hire occurred prior to the effective date of the Release, and, as to the remaining positions, he cannot establish a prima facie case because there was no available position or the position was never filled.[6] Therefore, plaintiff's complaint cannot survive.

## II. DCHRA Claims

 As apparently conceded by the plaintiff, his discrimination and retaliation claims under the DCHRA are time-barred.

As noted by this Court in its Order of November 9, 2000, plaintiff admitted that his DCHRA claim was time-barred as to defendant Brendsel. (Opinion, November 9, 2000, at 3 n. 3.) That concession necessarily applies with equal force to any DCHRA claims against defendants Freddie Mac and Delk. Claims of discrimination or retaliation brought under the DCHRA must be brought within one year of "the unlawful discriminatory act, or the discovery thereof." D.C.Code § 2–1403.16(a); *see also Paul v. Howard Univ.*, 754 A.2d 297, 311–12 (D.C.2000). Because plaintiff filed suit on his DCHRA claims on June 3, 1998, his DCHRA claims will be time-barred if the discriminatory or retaliatory conduct took place before June 3, 1997. Plaintiff claimed a violation of the DCHRA with respect to refusals to hire for the positions of Director, Industry Relations and Director, Government Relations, both of which occurred on February 6, 1996. Such claims are obviously time-barred.

## III. 1996 Release

Defendants are entitled to summary judgement on plaintiff's refusal to hire claims that arose before April 7, 1996, the effective date of the Release executed by plaintiff on March 31, 1996.

 Under Virginia law, which governs by virtue of Paragraph 11 of the Release, a release is viewed as an ordinary contract, and its scope is governed by the parties' intent as expressed in the language of the release. *See Berczek v. Erie Ins. Group*, 259 Va. 795, 529 S.E.2d 89, 91 (2000). When the release language is lawful and unambiguous, the agreement will

---

**4.** *See, e.g.,* Pl.'s Statement ¶¶ 10–13.

**5.** *See, e.g.,* Pl.'s Statement ¶¶ 11–14.

**6.** Given the conclusion that the eight positions which remain at issue in this suit were either covered by plaintiff's Release, not avail-

able, or never filled, the Court need not decide whether plaintiff was qualified for the position. As a result, much of defendants' evidence, which plaintiff does purport to dispute, will not be addressed herein.

be enforced as written. *See id.; see also Richfood, Inc. v. Jennings*, 255 Va. 588, 499 S.E.2d 272, 275 (1998). Neither party disputes the validity of the Release; thus this Court must enforce its plain language. *See Great Falls Hardware Co. of Reston v. South Lakes Village Center Associates, Ltd. P'ship*, 238 Va. 123, 380 S.E.2d 642, 643–44 (1989).

■ The language of the Release is clear and unambiguous and applies broadly to any "known or unknown" "claims of any nature," including "claims arising out of or relating in any way to [plaintiff's] employment relationship" and "claims involving any damages or continuing or future effects arising out of or resulting from any actions or practices which took place or arose prior to the date of this Release of Claims." Under Virginia law, this form of general release is enforceable whether plaintiff knew that he would be or had been injured by acts taken before its effective date. *See Virginia Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir.1971). In any case, it is not disputed that the broad language of the Release covers all discrimination and retaliation claims arising prior to its effective date.

■ Under federal law, plaintiff's decision to waive federal discrimination and retaliation claims will be enforceable if the decision was knowing and voluntary. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147, (1974); *see also Somervell v. Baxter Healthcare Corp.*, 966 F.Supp. 18 (D.D.C. 1997), *reversed on other grounds*, 159 F.3d 637 (D.C.Cir.1998); *Samman v. Wharton Econometric Forecasting Associates, Inc.*, 577 F.Supp. 934, 934–35 (D.D.C.1984) (voluntary settlement of disputes favored in Title VII cases). In this case, plaintiff does not contest the validity of the Release.

Nonetheless, plaintiff raises two arguments in an attempt to escape the all-encompassing language of the Release. Neither is persuasive. First, he claims not to have known that he had been denied a number of positions at Freddie Mac before the effective date of the Release. (*E.g.,* Pl.'s Opp. at 38.) However, even if his claim were not precluded by the clear language of the Release, it is, as a factual matter, refuted by plaintiff's own deposition testimony. Thus, no reasonable jury could find that plaintiff was unaware of his nonselection.

With respect to two of the positions—Director, Industry Relations and Director, Government Relations—Morgan admits that he had lunch with Mitchell Delk on February 6, 1996, and at this lunch, they discussed both of these jobs. (Pl.'s Decl. ¶ 16; Defs.' Statement ¶ 30.) However, as conceded by plaintiff, Delk told him that "he planned to 'reserve' the Director, Industry Relations position for one of his current directors;" and that as for the Director, Government Relations position, which was not vacant at the time, Delk "rejected" plaintiff's assertion that he was qualified by virtue of his Senate work, since "he was looking for someone with Republican House Committee experience" and he "suggested ... [that Morgan] apply for a comparable position outside of Freddie Mac." (Pl.'s Decl. ¶¶ 16–17.) Since plaintiff does not dispute these facts, it is irrelevant that he wrote to Delk on February 28, to "express ... [his] interest in the Director of Industry Relations or any other potential opportunities in your department." [7] (Pl. Opp., Exh. L; *see also*

7. Moreover, as discussed at p. 16–17, *infra,* the Director, Industry Relations position was never filled and there was no vacancy with respect to the Director, Government Relations, so plaintiff cannot, as a matter of law,

Pl.'s Opp. at 7–8.) Obviously, an expression of continued interest by Morgan does not negate the fact that he was told at lunch that he would never get either position,[8] and that he should look for a comparable private sector job. (Defs.' Statement ¶¶ 34, 42, 46; Pl.'s Dep. at 548–49, 561–63.)[9] Thus, any claim relating to his nonselection for these two positions is barred, since plaintiff surrendered any claims relating to these positions by signing the Release.

Similarly, the Release bars plaintiff's claim regarding the Director, Product Development/Business Management (1996) position. In February 1996, plaintiff approached James Cotton, Vice President, Marketing, regarding this position. (Defs.' Statement ¶ 60; Pl.'s Dep. at 785–86; Cotton Dep. at 9–10.) Mr. Cotton accelerated the recruitment process and interviewed plaintiff. In the end, however, after deciding that plaintiff was not qualified, Mr. Cotton informed plaintiff that he was not the top candidate. (Defs.' Statement ¶¶ 63–67.) Whether he was qualified for the position is irrelevant, since plaintiff admits that he knew that he was not the top candidate prior to executing the Release.[10] (Defs.' Statement ¶ 68; Pl.'s Dep. at 799–802, 832–35.) Moreover, plaintiff acknowledges that at the time, he viewed his nonselection as having been motivated by race discrimination. (Pl.'s Dep. at 802.) Plaintiff offers no evidence to suggest that defendant's decision was open for reconsid-

eration or was in fact reconsidered. Thus, the Release bars any claim arising from this refusal to hire.

Finally, the Release bars plaintiff's claims regarding the Director, Securities Marketing (1996) position. In his deposition (Pl.'s Dep. at 929), and in his Declaration (¶ 23), plaintiff admits that in March 1996, he interviewed with Robert Ryan and Roy Redlingshafer for this position, and that both "claimed that . . . [he] lacked the industry contacts to do an effective job." Further, Morgan concedes that he understood at the time that Redlingshafer did not think that he was qualified for the position. (Pl.'s Dep. at 928–29.) Despite these admissions, plaintiff attempts to argue that he was not informed that he would not be considered for the job during the March 1996 interview. (Pl.'s Statement ¶ 16.) Obviously, by being told that he lacked the necessary qualifications, Morgan had to know that he could not get the job and it would be purely superfluous for Redlingshafer and Ryan to provide specific notification to Morgan that he would not be considered for the position. Thus, even if plaintiff had not been explicitly told that he would not get the job, he knew that management thought he lacked the requisite skills, experience, and contacts. (Pl.'s Dep. at 928.) Therefore, a reasonable jury could only conclude that plaintiff was on notice of his rejection prior to signing the Release.[11]

prevail on either claim even in the absence of the Release.

**8.** Plaintiff admits that Gibbons also insisted that his " 'personality' would not fit in the department." (Pl.'s Opp. at 7.)

**9.** In his DCHRA Discrimination Complaint, filed on January 10, 1997, plaintiff claimed that the discriminatory conduct with respect to his nonselection for these positions occurred on February 6, 1996. (*See* Pl. Dep., Exh. 45.)

**10.** Again, plaintiff's follow-up communications in which he expressed continuing interest in the position do not establish a triable issue of fact. In fact, after refusing to hire plaintiff, Cotton did not consider him further for the position. (Cotton Dep. at 28–29, 87–89.)

**11.** This claim would also be encompassed by the Release's broad language which covered "unknown" claims where the "effect" appeared after execution of the Release but

Second, plaintiff argues, without any legal support, that the Release does not apply to the four nonselections discussed above, because the allegedly discriminatory conduct did not occur until the positions were filled by another applicant, which occurred, according to plaintiff, after he signed the Release. (*E.g.*, Pl.'s Opp. at 33.) Obviously, such an argument is flatly inconsistent with the plain language of the Release and must be rejected for that reason alone. But moreover, even if plaintiff were factually correct in his argument that each of the positions was filled after the date of the Release, which he is not,[12] the Release bars suit regardless of when the position might have been filled, since his claims would have accrued when he was told that he would not be hired, not when someone else was selected for the position. *See Delaware State College v. Ricks,* 449 U.S. 250, 256–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (discrimination complaint arose when plaintiff denied tenure, not when employment finally terminated); *see also Harris v. Ladner,* 127 F.3d 1121, 1124 (D.C.Cir.1997) (holding that statute of limitations commences when final decision made and communicated to plaintiff); *Thompson v. Capitol Police Bd.,* 120 F.Supp.2d 78, 82 (D.D.C.2000) ("[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.") (citation omitted).

In sum, plaintiff released defendants from "known and unknown" "claims arising out of or relating in any way to [plaintiff's] employment relationship," including "continuing or future effects that resulted from actions ... which took place ... prior to the date of this Release." As discussed above, the language of this Re-

lease forecloses plaintiff's claim as to four positions even if he did not know that he would be injured by conduct occurring before its effective date. *See Virginia Impression Prods.,* 448 F.2d at 265. Plaintiff was well aware of the rejections prior to the signing of the Release, and it is of no legal significance that the position may have been filled after the date of the Release. Thus, with respect to each of the four positions discussed above, because each refusal to hire took place before April 7, 1996, plaintiff surrendered those claims when he chose to execute the Release.

## IV. Discrimination

Plaintiff contends that defendants' refusal to hire him for a number of positions constitutes unlawful discrimination under Title VII and Section 1981. However, because plaintiff has failed to make out his prima facie case of discrimination under the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), summary judgment for defendants is appropriate on all these claims.

To establish a prima facie case of racial or political discrimination based on a refusal to hire, plaintiff must show that (1) he belongs to a protected class and that employment decision-makers were aware of this; (2) that he applied and was qualified for *an available position;* (3) that he was rejected despite his qualifications; and (4) that a similarly situated individual outside his protected class filled the position or the *position remained vacant and the employer continued to seek applicants. See Cones v. Shalala* 199 F.3d 512, 516 (D.C.Cir.2000) (emphasis added). The prima facie test is a flexible one that may be adjusted to the facts of the case at

---

arose from a decision made prior to the execution. *See Virginia Impression Prods.,* 448 F.2d at 265.

12. *See* discussion at pp. 16–17, *infra.*

hand, guided by the necessity of a showing that the employment action was taken " 'under circumstances which give rise to an inference of discrimination.' " *Harding v. Gray,* 9 F.3d 150, 152 (D.C.Cir.1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Even under this flexible standard, plaintiff cannot establish a prima facie case with respect to any of his refusal to hire claims, for he cannot show that the positions he applied for were either available or were not cancelled.[13]

■■■■ As is clear, there must be an available position. *See Cones,* 199 F.3d at 516 (plaintiff must demonstrate at least that his rejection did not result from one of the two most common legitimate reasons for which an employer might reject a job applicant: " 'an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.' ") (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)); *accord Carter v. Pena,* 14 F.Supp.2d 1, 6 (D.D.C. 1997); *see also Bishopp v. District of Columbia,* 57 F.3d 1088, 1092–93 (D.C.Cir. 1995) ("no damages available for hypothetical failure to fill [ ] position [that] . . . was never opened"). Absent a vacancy, plaintiff simply cannot argue that he was the victim of discrimination. *See Cones,* 199 F.3d at 516.

The undisputed evidence demonstrates that there was no vacancy for the position Director, Business Support. Plaintiff sent a letter of interest regarding the position dated July 3, 1997. (Morgan Dep., Ex. 64.) However, Freddie Mac's search to fill the position had been suspended in June 1997, and plaintiff was informed of this fact. (Defs.' Statement ¶¶ 143, 146.)

■■■■ In response, plaintiff attempts to argue that Freddie Mac did not suspend hiring for the position, but instead renamed it Director, Strategic Planning, and interviewed Ann Herington for the job sometime in the Fall of 1997. (Pl.'s Opp. at 32.) However, plaintiff's unsupported conjecture that the position was renamed does not create a genuine issue for trial. Plaintiff offers no evidence that the positions were in fact similar or the same except to note that the title of one position—"Strategic Planning"—was also one of the responsibilities of the Business Support position. Plaintiff cites to ten pages of Ann Herington's deposition transcript, which establish only that Herington was interviewed in the Fall of 1997 and was hired for the Strategic Planning position. (*See* Pl.'s Statement ¶ 17.) The fact that Herington interviewed in the Fall of 1997 is not even close enough in time to plaintiff's July application to raise an inference that the positions were one and the same. Moreover, defendants provide the Declaration of Cheryl Clarke, the Director, Human Resources at Freddie Mac in 1997, in which she avers that the position was not open when plaintiff applied and that it was ultimately eliminated. (Clarke Decl. ¶¶ 5–7.) Given this undisputed evidence, no reasonable jury could find that the positions were identical based solely on plain-

---

**13.** Plaintiff peppers his brief with unrelated instances of discriminatory misconduct at Freddie Mac and an extensive discussion of his qualifications for the positions in question. (*See, e.g.,* Pl.'s Opp. at 11, 16–17.) However, even if plaintiff could prove the superiority of his qualifications or incidents of racial hostility, this evidence does not fill the gaps in his prima facie case. Because plaintiff cannot establish a prima facie case for reasons unrelated to his qualifications, the Court need not address the issue of relative qualifications or evidence relating to the question of pretext under the *McDonnell Douglas* burden-shifting analysis. *See Cones,* 199 F.3d at 516.

tiff's self-serving comparison of one duty of the Business Support position and the *title* of the Strategic Planning position. Clearly, "neither the nonmovant's conjecture and surmise nor mere 'conclusory allegations of discrimination, without more' are sufficient to defeat a motion for summary judgment." *Carney v. American Univ.*, 960 F.Supp. 436, 439 (D.D.C.1997) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)), *aff'd in part, rev'd in part,* 151 F.3d 1090 (D.C.Cir.1998).

■ The position of Director, Issues Management (1997) was also filled before plaintiff applied. In June 1997 verbal offers were made by Ann Schnare to two applicants, Ellen Roche and Susan Gates, and both were hired before the plaintiff had even applied on July 7, 1997. (Defs.' Statement ¶ 172.)

Plaintiff baldly disputes this evidence without any competent proof. Instead, he points to a number of documents, none of which controverts the undisputed evidence of a June offer date. First, plaintiff offers "Personnel Administration Forms" that provide an "effective date" for Ellen Roche of July 16, 1997, and for Susan Gates of August 25 and September 16, 1997. (Pl.'s Opp., Ex. DD.) Plaintiff makes no attempt to explain the significance of these documents, except to argue that they do not support defendants' claim of a June offer date. (Pl.'s Opp. at 27–28.) In any case, the "effective date[s]" are entirely consistent with a June offer and do nothing to

assist the plaintiff's argument. Second, plaintiff offers a letter dated July 14, 1997, confirming the offer to and acceptance of the position by Ellen Roche. (*Id.*) Again, the July confirmation letter is entirely consistent with a June offer. In short, these documents do not create an issue of fact regarding the availability of these position in the face of the sworn testimony of Ann Schnare, who hired the people who filled the position.[14]

■ Similarly, plaintiff cannot establish a prima facie case regarding two positions that are covered by the Release—Director, Industry Relations (1996) and Director, Government Relations (1996). With respect to the Director, Industry Relations position, defendant Delk was not recruiting for the position at the time plaintiff expressed interest in the position. (Defs.' Statement ¶ 35; Morgan Dep. at 541, 560.) The position was never filled by Delk, but was eliminated altogether from his department. (Defs.' Statement ¶ 36.) Plaintiff does not dispute that Delk never filled the position; rather, he contends that the functions of the position were transferred to another department and filled one year later with the hire of Jim Park. (Pl.'s Opp. at 34–35.) While plaintiff appears to dispute defendants' claim that Jim Park did not fill the position of Director, Industry Relations, (Pl.'s Statement ¶ 6), he does not dispute that Park was never hired by or worked for Delk and

---

14. Plaintiff also argues that Freddie Mac advertised for one position, filled it with two people, and actually intended to fill it with "several." (Pl.'s Opp. at 28–29.) On this basis, plaintiff would have this Court infer that defendants' asserted justification for non-selection—that there was no vacancy—was pretextual. However, plaintiff offers no evidence to support his naked assertion that Freddie Mac intended to hire several persons for the position. Even if multiple hires were intended, plaintiff offers no evidence that the

hiring process had not been completed by June 1997. Unlike the cases plaintiff cites, defendants have not been caught in an outright lie. *See, e.g., Bahadirli v. Domino's Pizza,* 873 F.Supp. 1528, 1535 (M.D.Ala.1995) (plaintiff informed that there was no vacancy but wife offered employment over the phone soon thereafter). Given the absence of any competent evidence of a third vacancy, plaintiff cannot ask a jury to infer that the defendant was planning in July to hire additional persons for this position.

that Park was hired by Schnare in March 1997 as Director, ·Business Support I, in the Corporation Relations Division. (Defs.' Statement ¶¶ 38–39.) Plaintiff also relies on Exhibits JJ and KK (Pl.'s Statement ¶ 6), but neither of these documents raises an issue of fact as to this position, since neither makes reference to an Industry Relations position or to "Jim Park." Thus, as ruled by Magistrate Judge Facciola after reviewing all the relevant documents, Park's hire has no relevance to plaintiff's claim regarding his nonselection for the position of Director, Industry Relations, for Park never served in that position and was Director, Business Support. *See* Memorandum Order Issued by Magistrate Judge John Facciola on June 21, 2001, at 3.

With respect to the Director, Government Relations position, plaintiff does not contend that the position was open when he expressed interest in it. (Pl.'s Statement ¶ 7; Defs.' Statement ¶ 42.) Furthermore, plaintiff cannot establish that the position was ever available prior to filing this lawsuit. (Defs.' Statement ¶ 41.) Therefore, plaintiff cannot show that there was an available vacancy and this claim must fail for this reason, as well as because of the Release.

Plaintiff fares no better with respect to the remaining positions because he cannot establish that defendants ever filled the positions for which he applied. *See Carter*, 14 F.Supp.2d at 6 (no prima facie case when vacancy announcement cancelled and job was never filled); *Jones v. Tanoue*, 131 F.Supp.2d 220, 222 (no prima facie case when position was cancelled and never filled); *Newbury v. National Press Club, Inc.*, 1997 WL 664589 at *3 (D.D.C. August 26, 1997) (no prima facie case when position eliminated). With respect to the Director, Business Strategies (1997) position, it is undisputed that the position was never filled and was in fact eliminated in July 1997. (Defs.' Statement ¶ 164.) While plaintiff claims that Freddie Mac offered the position to another individual based on a Freddie Mac document indicating that the position was "to be offered to P. Mahoney," [15] (Pl.'s Opp., Ex. JJ.), this document does not establish that an offer was made. But more importantly, plaintiff offers nothing to dispute defendant's evidence that the position was never filled, but was ultimately cancelled.[16] Because plaintiff was not rejected in favor of another candidate who filled the position, a prima facie cannot be made.

Similarly, the Director, Issues Management (1998) position was never filled and ultimately cancelled in March 1998 by Dwight Robinson, an African–American who assumed the new position of Vice President, Industry Relations and Issues Management. (Defs.' Statement ¶¶ 207–210; Schnare Dep. at 96, 98–99, 106–108.) While plaintiff does not dispute this statement, he appears to be arguing that this position was offered non-competitively to Anne Herington at the end of 1997. (Pl.'s Opp. at 25–26.) First, any

---

15. Plaintiff also claims that the position was open to outside candidates, defendants' assertion to the contrary notwithstanding. (Pl.'s Opp. at 41.) However, because plaintiff cannot establish his prima facie case, both parties' evidence regarding whether the position was open to external candidates is irrelevant.

16. Defendants assert, citing deposition testimony of three employees, that "Delk hired no one for the position and eliminated it from his department on July 31, 1997." (Defs.' Statement ¶ 164.) In a totally nonresponsive statement, plaintiff claims that "[i]t is disputed that the position Director, Business Strategies was not offered to anyone .... The position was offered to Peter Mahoney in July 1997." (Pl.'s Statement ¶ 19.)

offer to Herington is irrelevant as it is not disputed that this position was not filled and was ultimately cancelled. (Defs.' Statement ¶ 210.) Second, plaintiff conflates a number of issues management positions. In fact, plaintiff did not apply for the position before it was offered to Herington. As discussed above, plaintiff applied for an earlier position (*i.e.*, Director Issues, Management (1997)) in July 1997, but it was already filled by Ellen Roche and Susan Gates. Herington submitted an application in July but understood that no position was then available, so she was not considered for the job. (Defs.' Statement ¶ 176; Schnare Dep. at 54–56; Herington Dep. at 16–17, 20–26.) As previously discussed, the absence of any vacancy alone is sufficient to defeat plaintiff's claim. *See Carter*, 14 F.Supp.2d at 6; *see also Rush v. McDonald's Corp.*, 760 F.Supp. 1349, 1362 (S.D.Ind.1991).

 When a second Director, Issues Management position (also referred to as Director, Issues Management (1998)) opened later in 1997, defendants were unaware of plaintiff's interest in the new position. (Schnare Dep. at 61–62.) Without having applied, plaintiff cannot establish a prima facie case of discriminatory nonselection. *See Cones*, 199 F.3d at 516. Moreover, even if plaintiff had applied for this position, it is undisputed that it was

never filled and ultimately it was cancelled. (Defs' Statement ¶ 210.) When Herington was interviewing at Freddie Mac for another position, Schnare learned of her interest and interviewed her for the Issues Management position as a replacement hire in late 1997; Herington was offered the job, but declined the position. (*Id.* ¶¶ 205–206.) Subsequently, the position was posted publicly and plaintiff had an opportunity to apply in January 1998. (*Id.* ¶¶ 207–208.) This vacancy, however, was never filled and the position was split into two manager-level positions. (*Id.* ¶ 210.) Therefore, plaintiff's claim as to this position must fail.[17]

In sum, as to at least six positions, plaintiff cannot make out a prima facie case. Accordingly, defendants are entitled to summary judgment as to these claims.

## V. Retaliation

 Finally, plaintiff contends that defendants retaliated against him in violation of Title VII with respect to the five positions that he did not get hired for after he filed his EEOC charge on December 11, 1996.[18] To establish a prima facie case of retaliation under Title VII, plaintiff must show, *inter alia*, an "adverse employment action." *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999). However, there can

---

**17.** The cases plaintiff relies upon do not establish that the offer of a position to Herington is by itself sufficient to satisfy plaintiff's initial burden. *See Cones*, 199 F.3d at 517 (lateral transfer who filled position was sufficient to make out prima facie case on claim of discriminatory non-promotion); *Kolstad v. American Dental Ass'n*, 108 F.3d 1431, 1436 (D.C.Cir.1997) (prima facie case requires proof that position was filled).

**18.** These positions included: Director, Business Support (1997), Director, Business Strategies (1997), Director, Issues Management (1997), and Director, Issues Management (1998). Plaintiff also alleges retaliation with

respect to the position Director, Government Relations (1996). As noted above, plaintiff was informed on February 6, 1996, that he would not be considered for this position; thus, plaintiff's claim is unambiguously barred by the Release. Furthermore, the refusal to hire occurred well before plaintiff filed his EEOC charge, making it impossible for plaintiff to establish a causal connection between the non-selection and his discrimination complaint. *See Hazward v. Runyon*, 14 F.Supp.2d 120, 124–25 (D.D.C.1998) (not possible to establish causal connection between discrimination complaint and employer action antedating that complaint).

be no finding of an adverse action if there was no vacancy at the time plaintiff applied or the position was never filled. *See International Bhd. of Teamsters*, 431 U.S. at 358 n. 44, 97 S.Ct. 1843 (*McDonnell Douglas* "demand[s] that the alleged discriminatee demonstrate at least that his rejection did not result from … the absence of a vacancy in the job sought."); *Macellaro v. Goldman*, 643 F.2d 813, 816 (D.C.Cir.1980) (withdrawal of position that was never filled did not harm plaintiff). As shown at pp. 13–20, *supra*, as to each of the five positions that plaintiff applied for after December 11, 1996, it is undisputed that there was no vacancy or the position was never filled. Therefore, plaintiff's retaliation claims must also be dismissed.

## CONCLUSION

For all of the above reasons, Defendants' Motion for Summary Judgment is granted. A separate order will accompany this opinion.

## *ORDER*

This matter is before the Court on defendants' Motion for Summary Judgment, plaintiff's opposition, and defendants' reply thereto. For the reasons stated in the Court's accompanying memorandum opinion, it is hereby

**ORDERED** that defendants' motion is **GRANTED** as to all counts of plaintiff's complaint; and it is

**FURTHER ORDERED** that plaintiff's complaint is dismissed with prejudice.

**SO ORDERED.**