Dwight ROWLAND, Plaintiff,

v.

David WALKER, et al., Defendants.

No. CIV.A. 01–567(JMF).

United States District Court, District of Columbia.

Feb. 21, 2003.

William Spencer Bach, Washington, DC, for Plaintiff.

Michael C. Johnson, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Currently ripe and ready for resolution is *Defendants' Motion for Summary Judgment* ("Defs.Mot."). For the reasons articulated below, defendants' motion will be granted.

## BACKGROUND

▮ Dwight Rowland ("plaintiff") is suing David Walker, the Comptroller General of the General Accounting Office ("Walker"), Michele M. Hamilton, a Human Resources Manager at GAO ("Hamilton"), and Timothy DiNapoli, a Supervisor at GAO ("DiNapoli"), for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*[1] Plaintiff claims that he was discriminated against because of his race and gender, that he endured a hostile work environment, and that he was retaliated against.

## DISCUSSION

I. *Defendants' Motion to Dismiss is not Premature*

▮ It is legitimate to oppose a motion for summary judgment by submitting an

---

**1.** In the case currently before the court, in addition to alleging violations of Title VII of the Civil Rights Act, plaintiff alleges violations of 1) "5 U.S.C. § 2302(b)(1)," Complaint ("Compl.") ¶ 4, 2) "Section 206 (Rights and Protection Relating to Veteran's Employment and Re Employment of the Congressional Accountability Act (CAA)." *Id.* at ¶ 7, and 3) the "Veterans Preference Act of 1944." *Id.* Section 2301 *et seq.* of Title 5 of the United States Code is the codification of the "Civil Service Reform Act of 1978," which provides executive branch employees with an administrative remedy for claims of discrimination. However, assuming that plaintiff did receive a Right to Sue letter, as indicated in his complaint and not contested by defendant, he therefore has exhausted his administrative remedies and, technically, does not proceed in this court under the Civil Service Reform Act. Plaintiff also cites Section 206, apparently a reference to an internal National Security and International Affairs regulation. However, this, too, is not a basis for asserting jurisdiction in district court. Finally, there is no private right of action under the Veterans Preference Act. *Luttrell v. Runyon,* 3 F.Supp.2d 1181, 1187 (D.Kan.1998). Pursuant to the Supreme Court's ruling in *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), claims of discrimination by federal employees may only be brought under Title VII.

affidavit attesting that one cannot "for reasons stated present by affidavit facts essential to justify the party's opposition." FED. R. CIV. P. 56(f). Plaintiff attempts to meet this burden by insisting that he never received (1) the performance evaluations and progress reports for the African American Band 1D evaluators of 1998 and (2) copies of the e-mails of the persons he named in his *Request for Entry upon Land.*[2]

Defendants first point out that plaintiff never requested information regarding the performance evaluations of African American Band 1D evaluators during discovery. *Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment* ("Defs.Reply") at 3 n. 1. Defendants then explain that plaintiff narrowed his request for e-mail to all e-mails created by two persons during a certain period of time and that defendants sent these e-mails to plaintiff's counsel by a letter dated June 13, 2002. *Id.* & Exhibit 20 (letter transmitting e-mails).

Plaintiff also seeks to forestall defendants' motion because he wishes to secure affidavits from James Driggins and from unnamed "coworkers, supervisors who rated Plaintiff as 'fully successful' in his job performance." Affidavit of William S. Bach, Esquire. Additionally, plaintiff's counsel indicates a desire to secure affidavits from persons who rated plaintiff as fully successful before defendants' witnesses in this case found good cause to terminate him. *Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment* ("Plains.Opp.") at 10.

None of this is reason to postpone resolution of defendants' motion. First, according to defendants' counsel, plaintiff se-cured the emails on June 13, 2002. It is now several months later and plaintiff has never sought leave to use them to supplement his earlier opposition on any ground whatsoever. They, therefore, cannot possibly be relevant to any argument plaintiff wishes to make to defeat defendants' motion.

Second, defendants' assertion that plaintiff never sought the performance evaluations and progress reports of African American Band 1D evaluators in discovery is uncontradicted. Since plaintiff never sought them in the first place, their absence cannot possibly be grounds under Fed.R.Civ.P. 56(f) to postpone resolution of a motion for summary judgment. The deadline to complete discovery in this case has come and gone. It cannot possibly be the law that a party can forego seeking information by discovery and, when confronted by a motion for summary judgment, seek discovery it never sought in the first place to defeat the motion. Fed.R.Civ.P. 56(f) cannot possibly be construed to justify such a result and it would be hard to imagine how one could more mock the meaning of a discovery deadline.

Plaintiff's attempt to forestall resolution of the motion based on what his counsel wishes to secure fares no better. First, James Driggins was deposed in this case. Plaintiff concedes as much, but indicates that "at no time has the Plaintiff deposed him or had the opportunity to obtain an affidavit from him." Plains. Opp. at 3. But nothing prevented plaintiff's counsel from eliciting whatever he wished to elicit that would support plaintiff's case during Driggins' deposition. That plaintiff has not deposed him is immaterial. I know of no rule of procedure that permits each

2. *I.e.,* Marke Grebke, Norman Rabkin, Steven Caldwell, Timothy DiNapoli, Beverly Schladt, Thomas Gosling, James Driggens and Henry Hinton, Jr. *Plaintiff's Opposition to Defendants' Motion for Summary Judgment,* Exhibit A, ¶ 2.

witness to be deposed twice, once by a party's opponent and then by the party, with each side permitted to ask different questions during "plaintiff's deposition" and then during "defendant's deposition." As for plaintiff's inability to secure an affidavit from Driggins, no reason whatsoever is given for this inability. If he was available for a deposition, why was he unavailable to sign an affidavit?

Second, plaintiff wants to secure affidavits from plaintiff's supervisors who evaluated his performance before he went to work as a Band–1 evaluator with the General Accounting Office. Again, discovery in this case began on September 17, 2001, and ended on February 28, 2002. Defendants were granted until at least May 6, 2002, to file their motion for summary judgment. Hence, plaintiff had from September 17, 2001, to May 6, 2002, to secure affidavits from plaintiff's supervisors and did not do so. Moreover, unless the duties plaintiff had in all of the jobs at issue were identical, the manner in which one person rated him on one job is irrelevant to how someone else rated him on another job. Thus, the affidavits plaintiff seeks are irrelevant.[3]

■ A request to postpone resolution of a motion for summary judgment when the party opposing the motion has failed to avail himself of discovery to secure the information should be denied. *Beattie v. Madison County School Dist.*, 254 F.3d 595, 606 (5th Cir.2001); *Doty v. Illinois Cent. R.R. Co.*, 162 F.3d 460, 462 (7th Cir.1998); *Alexander v. FBI*, 186 F.R.D. 180, 185 (D.D.C.1999). *See* 10B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2741 (3d 1998). If failing to take discovery is no excuse, then so is failing to

secure affidavits from witnesses one can find on one's own. Finally, as will become clear, plaintiff cannot establish that the affidavits he never ·secured, but wants to get now, would have any affect whatsoever on my resolution of the issues presented by the defendants' motion because affidavits from people who rated her in a certain way have nothing to do with why the government's motion must be granted. Hence, there is no reason whatsoever to postpone resolution of defendants' motion. *See Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir.2001).

## II. *The Case Against Hamilton and Di-Napoli Must Be Dismissed*

■ Under Title VII, federal employees claiming discrimination against the federal government must name "the head of the department, agency, or unit," as the defendant in an civil action. 42 U.S.C.A. § 2000e–16(c). While plaintiff properly named David Walker, Comptroller General of the National Security and International Affairs Division of the General Accounting Office, as a defendant, he also named Hamilton and DiNapoli as defendants. Hamilton was Human Resource Manager of the International Affairs Division and DiNapoli was a supervisor at GAO. Thus, while Hamilton and DiNapoli were employed by GAO, they were not department, agency, or unit heads and therefore cannot be sued in this Title VII action. *See Wilkins v. Daley*, 49 F.Supp.2d 1 (D.D.C. 1999). Therefore, they will be dismissed as party defendants.

## III. *Plaintiff's Burden*

To defeat defendants' motion for summary judgment, plaintiff must point to ad-

---

**3.** As the defendants correctly point out, the courts have refused to find that prior evaluations establishing competent performance, in themselves, render later evaluations that are critical, untrustworthy and therefore pretextual. Defs. Reply at 15 and cases cited therein.

missible evidence that would permit a reasonable juror to return a verdict in his favor.[4]

## IV. *Plaintiff's Claim of Disparate Treatment Based on Race and Gender Must Be Dismissed*

■ Plaintiff claims that he was discriminated against based on disparate treatment because of his race, African American, Compl. ¶ 4, and his gender. Compl. ¶ 6.

As to plaintiff's race claim, plaintiff alleges that whites were given "significantly more on the job training, coaching and mentoring ... [and] better assignments with more potential to develop basic skills critical to success as an evaluator." Compl. ¶ 4. As to plaintiff's claim of discrimination based on gender, plaintiff fails to make any allegations at all regarding the treatment of women compared to the treatment he received.

As noted above in footnote 4, all justifiable inferences are drawn in favor of the non-moving party. Additionally, the non-moving party must do more than cast doubt on the facts-he must provide evidence that would allow a reasonable juror to find in his favor. Plaintiff's claim of discrimination, whether based on race or gender, fails completely. The only individual that plaintiff names as a potential comparator is Joanna Ayers ("Ayers"), whom the court presumes, based on the wording of plaintiff's opposition to the summary judgment motion, to be a "non-black female." Plains. Opp. at 7. However, when questioned about the opportunities that plaintiff claims Ayers was given that plaintiff was not, plaintiff could not provide any proof beyond his belief that this had occurred. In fact, in his deposition, plaintiff conceded that he has no proof that Ayers was given the opportunity to 1) participate in or lead meetings, *Defendants' Notice of Filing of Exhibits in Support of Defendants' Motion for Summary Judgment* ("Defs.Exhibits"), Tab 9, at 96, 2) draft chapters of reports, *id.*, 3) design how a job would be accomplished, *id.*, at 99, 4) conduct interviews, *id.*, and 5) take

---

4.

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989). The nonmovant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant must provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, 1998 WL 164780 at *3 (D.D.C. March 31, 1998), *aff'd*, 1999 WL 825425 (D.C.Cir. Sept. 27, 1999) (citation omitted). *Morgan v. Federal Home Loan Mortg. Corp.*, 172 F.Supp.2d 98, 103–04 (D.D.C.2001).

courses, *id.*, at 102. Thus, he fails utterly to meet his burden of establishing that he was treated differently from anyone who did not share his race or gender.

## V. *Plaintiff was not Subjected to a Hostile Work Environment*

To permit a jury to find that he was subjected to a hostile working environment, plaintiff must establish that his workplace was so permeated with discriminatory intimidation, ridicule, and insult that it altered the terms and conditions of his employment. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Stewart v. Evans,* 275 F.3d 1126, 1133–34 (D.C.Cir.2002). In determining whether there is evidence upon which a reasonable juror could find that such an environment exists, courts are to consider the frequency of such conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. *Harris v. Forklift Systems, Inc.,* 510 U.S. at 22, 114 S.Ct. 367.

Therefore, in assessing whether plaintiff has established even a *prima facie* case of a hostile working environment, one must look at the entire atmosphere in which plaintiff worked to see if it meets the *Harris* requirements.

Plaintiff claims that he was "subject to harsh and openly abusive criticism by superiors in front of workers who were part of the daily process of job growth and success." Compl. ¶ 4. Plaintiff further claims that "[t]he work place that GAO presented to Plaintiff was unsafe hostel [sic] and one in which he could not function and was harassed daily." *Id.,* at ¶ 11. Plaintiff identifies two supervisors who he

claims treated him badly: Joan Slowitsky and Thomas Gosling.

### A. *Joan Slowitsky*

When questioned by defense counsel during his deposition, plaintiff claimed that Slowitsky made the following statements to him:

... [N]o one is going to show you how to get around at GAO. There's no need of you going to the other team lead or the assistant director about me because I've been here 22 years. It don't matter— it does not matter what you tell them, only what I say is going to count. Her actions of when we were in counseling session, her loud voice, and bamming [sic] and pointing at me and slamming on the desk, expressions towards me, the times when we were in counseling with Ms. Sladt and she tried to belittle me and tell me that I wasn't worthy of being at GAO, and I need to go find somewhere else to be.

Defs. Exhibits, Tab 9, at 118.

In her deposition testimony, Slowitsky denies that she ever yelled at plaintiff or even raised her voice at him. Defs. Exhibits, Tab 8, at 29. In fact, Slowitsky claims that she even made efforts to help him succeed in meeting the required performance standards. *Id.,* at 56.

### B. *Thomas Gosling*

Gosling supervised plaintiff for a ninety day period from February 7, 2000, to May 7, 2000. Plaintiff claims that during that ninety day period, known as plaintiff's "opportunity plan," Gosling treated him in a "strict" manner. Defs. Exhibits, Tab 9, at 82. However, plaintiff conceded that he had no evidence to support his claim and that Gosling explained that the purpose behind the opportunity plan was to show improvement in the areas in which he had received low marks from Slowitsky. *Id.,*

at 63. Thus, plaintiff admitted that he understood that the reason he was not allowed to get assistance in preparing his reports was that Gosling was attempting to rate plaintiff's work:

> The assistant director whose name I think is Steve is coming to me. Steve— I can't get his last name out. Steve— he told me that because I'm under scrutiny for 90 days, I can't be getting any help in terms of coaching or helping write up documentation because they have to grade me.

*Id.*, at 66.

Clearly, the evidence in this case does not support plaintiff's claim that he was subjected to a hostile work environment. Although both Slowitsky and Gosling refute plaintiff's claim that they treated him poorly, even if true, the alleged treatment does not rise to the level of a hostile work environment. Slowitsky's alleged statements make no mention of either plaintiff's race or gender. Furthermore, as to Gosling, there is no evidence that plaintiff endured jokes, insults, or calumny based on either his race or gender. His claim of being subjected to a hostile working environment is utterly unsupported by any evidence and must, therefore, be dismissed.

## VI. *Plaintiff was not Subjected to Retaliation*

In order to assert a claim of retaliation under Title VII, "plaintiff must establish that: 1) he or she engaged in a statutorily protected activity; 2) he or she was subjected to adverse personnel action; and 3) a causal connection exists between the adverse action and the protected activity." *Lutes v. Goldin,* 62 F.Supp.2d 118, 133 (D.D.C.1999) (citations omitted).

When specifically asked during his deposition what he believed to be the form of the GAO's retaliation, plaintiff identified the following: 1) Slowitsky's treatment of him, *id.,* at 103, 2) Sladt's refusal to hear plaintiff's complaints about Slowitsky, *id.,* 3) Beusse's refusal to entertain plaintiff's complaints, *id.,* 4) the correction of his employment contract to reflect a 2 year probationary period versus a 1 year period, *id.* at 104, and 5) DiNapoli's telling plaintiff that it didn't matter what anyone else thought about plaintiff's work and that only DiNapoli's opinion mattered since he was plaintiff's supervisor. *Id.*

### A. *Slowitsky's Treatment of Plaintiff*

Slowitsky was plaintiff's supervisor from September 1, 1999, to December 31, 1999. Although not specified by plaintiff, the court will assume that the behavior he complains of occurred at some point during the period of time that she oversaw plaintiff's work. It is unclear, however, what exactly plaintiff claims provoked the alleged retaliation. Plaintiff cannot claim that his treatment at the hands of Slowitsky was in retaliation for his filing of an EEO complaint since plaintiff first contacted that GAO Civil Rights Office on April 24, 2000, a full four months *after* he was last supervised by Slowitsky.

### B. *Sladt's Treatment of Plaintiff*

Next, plaintiff apparently claims Sladt's refusal to hear plaintiff's complaints about Slowitsky was an act of retaliation. Again, however, the court is unsure what exactly prompted the alleged retaliation. It could be that plaintiff contends that Sladt's refusal to entertain his complaints about Slowitsky was in retaliation for plaintiff's attempt to register those complaints. If that is the case, plaintiff's claim of retaliation as to Sladt must fail as it hardly rises to the level of retaliation recognized by the law. Sladt's refusal to entertain plaintiff's complaints, if true, can in no way be classified as an adverse per-

sonnel action. *See Brown v. Brody*, 199 F.3d 446 (D.C.Cir.1999). Notwithstanding the negative impact Sladt's treatment may have had on plaintiff's feelings, it did not constitute a significant change in plaintiff's employment status or benefits and, therefore, is not actionable.

### C. *Beusse's Treatment of Plaintiff*

The same argument that holds true for Sladt also applies to Beusse. If plaintiff contends that Beusse's refusal to entertain plaintiff's complaints about Slowitsky was in retaliation for plaintiff's attempt to register those complaints, then that, too, fails to make out an actionable claim of retaliation.

### D. *The Correction of Plaintiff's Employment Contract*

■ Plaintiff alleges that the GAO's decision to change his personnel records to reflect a longer probationary period was in fact retaliation for his contacting the GAO Civil Rights Office on April 24, 2000: "And also I'm testifying here that when I brought it to GAO's attention that they had me under one-year probation under the civil rights complaint that I filed at GAO [5]— that is, when they corrected it and told me, oh, I'm sorry, Mr. Rowland, it's not one year." Defs. Exhibits, Tab 9, at 29. Plaintiff further states: "[w]hen I went to the civil rights office and I was talking to the civil rights counselor in confidence, and she was trying to do something off the record to help me and once she did that, the only thing that happened-they rectified the situation which goes back to the probationary period one year to be able to put me in a position to where

they continued the execution of ridding me out of this organization."

*Id.*, at 104.

Defendants argue that, when the GAO notified plaintiff that his probationary status had been incorrectly conveyed in his original offer letter dated August 10, 1998, it was merely correcting an oversight: "Admittedly, Michele Hamilton sent to plaintiff a memorandum dated May 2, 2000, informing him that his original offer letter-indicating that he would 'serve a 1 year trial period'-was in error." Defs. Mot. at 25. According to defendants, "Ms. Hamilton's May 2, 2000 letter did not 'change' plaintiff's probationary period to a two year period. Rather, the letter merely notified plaintiff of an error in his record." *Id.*

The issue, therefore, is whether there is any evidence that defendants altered their original calculation in retaliation for plaintiff's meeting with a counselor in the GAO Civil Rights Office in April 2000.

According to four Official Notices of Personnel Action that antedated his contacting the GAO Civil Rights Office in 2000 dated August 16, 1998, August 30, 1998, January 3, 1999, and August 29, 1999, plaintiff's appointment was identified as being subject to a two year probationary period scheduled to begin August 16, 1998, just six days following the date of the GAO's original offer letter to plaintiff.

In addition, it must be noted that the four Official Notices of Personnel Action originated in the U.S. Office of Personnel Management, whereas plaintiff's offer letter was sent by Michele Hamilton, Human Resource Manager of the GAO. Although plaintiff's reliance on the letter from the

---

**5.** Presumably, Rowland meant to testify during his deposition regarding his initial contact with the GAO Civil Rights Office on April 24, 2000, rather than his filing of an administrative complaint on May 4, 2000. Otherwise, plaintiff would be claiming that on May 2, 2000, he was retaliated against for an action he didn't take until May 4, 2000.

GAO is understandable, that reliance alone does not entitle plaintiff to benefits or rights that were never his. In addition, the corrective memorandum that plaintiff received from Hamilton on May 2, 2000, refers plaintiff not only to a GAO regulation, but also to the four Official Notices of Personnel Action that antedate his contacting the GAO Civil Rights office in 2000.

Plaintiff thus fails to meet his burden as to the very first element of his *prima facie* case of retaliation. The memorandum sent by the GAO to plaintiff regarding his probationary status, while disappointing to plaintiff, clearly does not rise to the level of being an adverse personnel action. Correcting a mistaken statement cannot possibly be a legal wrong, actionable in a Title VII action.

### E. *DiNapoli's Statements*

After receiving what was presumably an unfavorable write-up from DiNapoli, plaintiff contacted Mr. Sprull. According to plaintiff, "after the incident Mr. Sprull was reassigned on his reserve duty out of GAO for a year." Defs. Exhibits, Tab 9, at 104. Plaintiff continues: "No sooner than a week after Mr. DiNapoi told me that it doesn't matter what someone else thinks about what you did. The only person that matter is me because I'm the supervisor." *Id.* Plaintiff adds that he believed that this statement, and perhaps others, were made between July 1998 and July 1999. *Id.*, at 105. As with Sladt's and Beusse's treatment of plaintiff, DiNapoli's statements do not rise to the level of an adverse personnel action and, therefore, do not constitute a basis for an actionable claim of retaliation. Additionally, and once again, DiNapoli's statements were made before plaintiff filed his EEO complaint in 2000.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment will be granted and this case will dismissed. An Order accompanies this Memorandum Opinion. Additionally, final judgment is entered for the defendants.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby,

**ORDERED** that *Defendants' Motion for Summary Judgment* [# 25] is **GRANTED.**

**SO ORDERED.**

### FINAL JUDGMENT

*Defendants' Motion for Summary Judgment* having now been granted, **IT IS ORDERED AND ADJUDGED** that plaintiff take nothing, that the action be dismissed on the merits, and that the defendants recover from the plaintiff their costs of action.

**SO ORDERED.**