**Richard L. BEAMS, Plaintiff,**

**v.**

**Gale NORTON, Secretary of the Department of the Interior, Defendant.**

No. 00–4124–SAC.

United States District Court, D. Kansas.

March 4, 2003.

Mary K. Ramirez, Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, District Senior Judge.

The case comes before the court on the defendant's motion for summary judgment (Dk.64) and on the plaintiff's "motion to reconsolidate (sic) EEOC complaints" (Dk.69). This is an employment discrimination case in which the plaintiff alleges that the defendant discriminated against him on the basis of his gender, age, race, physical handicap, and retaliation by not re-employing him on six separate occasions.

## MOTION TO REVIEW AND/OR MOTION TO AMEND

What the plaintiff has labeled a "motion to reconsolidate" is actually a motion for this court either to review and reconsider the magistrate judge's order filed April 24, 2001, (Dk.28) or to amend the pretrial order. The plaintiff filed a motion on February 23, 2001, (Dk.21) seeking to amend his complaint by adding more instances of discrimination complaints filed by the plaintiff with the Bureau of Indian Affairs ("BIA"). The magistrate judge de-nied the plaintiff's motion to amend for non-compliance with D.Kan. Rule 15.1 and as improperly conditioned on a prospective administrative appeal ruling. (Dk.28). The plaintiff never filed a motion to review the magistrate judge's order within the ten-day period required by Fed.R.Civ.P. 72(a). D.Kan. Rule 72.1.4(a). A pretrial order was filed in this case on March 1, 2002, (Dk.62), and it does not include any of the additional discrimination complaints that are the subject of the plaintiff's motion.

To the extent that the plaintiff wants this court to review and reconsider the magistrate judge's order filed April 24, 2001, this request is denied as untimely. The court also denies the defendant's motion to amend the pretrial order to include these additional discrimination complaints. It is not manifest injustice under Fed. R.Civ.P. 16(e) to deny the plaintiff his wish to have all of his discrimination complaints decided in a single case. To add four more discrimination complaints would be unfairly prejudicial to the defendant who has completed its discovery of this case and has filed an extensive summary judgment motion on the six discrimination complaints alleged here. The plaintiff's motion to have these additional EEOC complaints added to this case is denied.

## SUMMARY JUDGMENT MOTION

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence of record and draw all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998). (citations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995). "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1541 (10th Cir. 1995). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Vasquez v. Ybarra,* 150 F.Supp.2d 1157, 1160 (D.Kan.2001) (citing *See Gullickson v. Southwest Airlines Pilots' Ass'n,* 87 F.3d 1176, 1183 (10th Cir.1996) (applying local rules of District of Utah)); see also D.Kan. Rule 56.1(b)(1).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon,* 935 F.2d at 1110; *see Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991) ("Despite liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995). For that matter, the non-movant's duty to admit or deny allegations of fact is a well-established procedural rule in Fed.R.Civ.P. 56 and is not too complex for a pro se litigant to understand and follow. *Hammad v. Bombardier Learjet, Inc.,* 192 F.Supp.2d 1222, 1231–32 n. 6 (D.Kan.2002). Thus, the court will follow the well-known and well-established rule that "unsubstantiated allegations carry no probative weight in summary judgment

proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted).

The plaintiff devotes most of his memorandum opposing summary judgment to a section he entitles, "Statement of Material Facts that Plaintiff Contends a Genuine Issue Exists and This Case Should Not Be Dismissed or Have a Summary Judgment But Should Have a Jury Trial as Requested." The plaintiff's memorandum refers by paragraph number to the defendant's "Statement of Facts" and then responds with allegations and occasional citations to 266 pages of exhibits attached to his memorandum. Though he appears to understand the basic requirements for opposing a summary judgment motion, the plaintiff's "Statement of Material Facts" consists largely of bare allegations that are not supported or verified by any Rule 56 evidence. In almost every instance, the plaintiff's statements are not effective at controverting the facts stated in the defendant's memorandum, because they are either not responsive or not supported by any documentation proper under Fed. R.Civ.P. 56 or D.Kan. Rule 56.1. For these reasons, the court concludes the following facts appearing in the defendant's memorandum are uncontroverted as a matter of law.

### Background Facts

1. The plaintiff, Richard L. Beams, worked as a soil conservationist for Bureau of Indian Affairs ("BIA") under the Department of Interior ("DOI"). In August of 1990, Linda Saunders was permanently assigned the position of superintendent of the Horton BIA Agency and supervised its staff of thirteen employees, including the plaintiff Richard Beams.

2. Linda Saunders issued to the plaintiff a letter of admonishment dated August 17, 1990, for inappropriate conduct in influencing a tribal officer to sign a document without prior approval from the tribal council and in embarrassing his supervisor in a tribal council meeting. (Govt's Ex. 3). Linda Saunders wrote a letter of apology to the tribal council for the plaintiff's conduct.

3. Linda Saunders sent the plaintiff a memorandum dated October 2, 1990, that assigned him specific job tasks and procedures intended to make leasing activities more current. Approximately three weeks later, the acting realty officer, Brenda Shadwick, sent a memorandum to Ms. Saunders that indicated the plaintiff's performance was still deficient in those assigned areas.

4. On March 22, 1991, Linda Saunders met with the plaintiff and Brenda Shadwick to check with his progress on certain assigned work. Ms. Saunders verbally admonished the plaintiff about getting involved in other matters that kept him from completing his assigned work. The plaintiff walked out of the meeting and refused to return to the meeting even after being warned that his refusal would be considered insubordination. [The plaintiff has attached a copy of an administrative memorandum prepared by Linda Saunders and dated March 26, 1991, in which she proposed that the plaintiff be terminated for cause. This memorandum is not responsive to the defendant's statement of facts.]

5. The plaintiff had difficulty interacting with others in the office. For example, the acting realty officer was forced to direct the plaintiff to comply with regulations with which he disagreed. The plaintiff also interfered with realty issues that were outside the scope of his job duties.

6. On April 19, 1991, Linda Saunders issued a written memorandum proposing that the plaintiff Richard Beams be suspended for fourteen days. The three-page memorandum listed the reasons and incidents for the proposal and was signed by the plaintiff as received on the same day.

The listed reasons included: "refusing to cooperate in an official proceeding, delay in carrying out instructions; insubordinate defiance of authority; disregard of directives; refusal to comply with a proper order; and failure to attend to duties." (Govt's Ex. 1, p. 71). In response, the plaintiff immediately submitted his written notice of resignation effective "as of April 19, 1991 as a result of your continued misrepresentation of the truth regarding my work and my intentions in my work." (Govt's Ex. 8).

7. The assistant administrative officer at the Horton office spoke with the plaintiff on two occasions about alternatives to his resignation, including a possible transfer. On both occasions, the plaintiff insisted that he considered resignation to be his only alternative.

8. The plaintiff then filed a complaint of sex discrimination with the BIA alleging he had been forced to resign because of unbearable working conditions created by discrimination on the basis of his gender. Following an evidentiary hearing before the Merit Systems Protection Board ("MSPB"), the MSPB administrative judge issued a written order finding that the Horton agency had good cause for proposing the plaintiff's suspension, that the Horton agency had not subjected the plaintiff to unbearable working conditions, and that the plaintiff's resignation from federal service was voluntary. The MSPB denied the plaintiff's petition for review, the Federal Circuit Court of Appeals affirmed the MSPB's decision on appeal, and the United States Supreme Court denied the plaintiff's petition for certiorari as untimely. [The state referee's findings from the unemployment compensation benefit hearing are not material and do not controvert the facts appearing here.]

9. Following his resignation in 1991, the plaintiff applied with the BIA for numerous positions and filed complaints of discrimination when he was not selected. This lawsuit stems from those complaints of discrimination that are identified by their BIA complaint numbers and the title of the different positions for which he applied.

10. The plaintiff attaches as an exhibit to his memorandum a performance evaluation dated February 14, 1990, and completed by the acting superintendent before Linda Saunders. Based on three months of supervision, the acting superintendent rated the plaintiff's work performance as satisfactory.

11. Linda Saunders is an Indian. For those positions filled while Saunders was a superintendent at the Horton agency, she hired American Indians for most of those positions.

### BIA Complaint 94–067 (Soil Conservationist, Kansas)

12. This complaint stems from the plaintiff's application for the very same soil conservationist position in the Horton BIA agency from which he resigned in 1991. This position was advertised within the BIA several times in 1991, but none of the applicants were selected. The position was then advertised by the Office of Personnel Management ("OPM") several times in 1992. The plaintiff applied during an open period in August of 1992.

13. When she learned that Richard Beam appeared on the OPM's list of qualified applicants for the soil conservationist position, Linda Saunders in her position as superintendent of the Horton agency submitted a written memorandum to the area personnel officer objecting that the plaintiff had not performed satisfactorily in this position and that the plaintiff did not have requisite skills to perform this position as it was now configured. In her memorandum, Saunders set out nine paragraphs of reasons behind her objection. Jeannie

Cooper, the acting area personnel officer on October 14, 1992, concurred with Saunders' memorandum and submitted a Standard Form 62, Statement of Reasons for Objecting to an Eligible, Passing Over a Preference Eligible, on Richard Beam, which was forwarded to the OPM. The OPM sustained the objection and the plaintiff's name was removed from the list of eligible applicants for the soil conservationist position. When notified of this OPM decision, the plaintiff erroneously concluded he had been debarred from all federal employment. By letter dated December 16, 1993, OPM officials explained that he had never been debarred and that his August 1992 application was being returned to OPM's Wichita office and made available for referral to interested agencies.

14. From OPM's list of eligible candidates, which did not include the plaintiff's name, Linda Saunders selected Gene Harter, a non-Indian male who was between the age of 55 and 60, to fill the soil conservationist opening. Harter was older than the plaintiff.

15. The plaintiff filed a complaint of discrimination against the BIA alleging he was not selected for the soil conservationist because of his American Indian race, his age being over 40, and his handicap of a broken hip, and in reprisal for bringing a claim of discrimination. The BIA investigated the complaint and created a record of its investigation. The plaintiff requested a hearing before an administrative judge with the Equal Employment Opportunity Commission ("EEOC") who issued written findings and conclusions. The administrative judge found no prima facie case of age discrimination as the person selected was older than the plaintiff. As to the claims of race discrimination and reprisal, the administrative judge found prima facie cases but concluded that the agency had articulated legitimate reasons

for removing the plaintiff from the list of eligible applicants and that the plaintiff had failed to show the agency's reasons were pretextual or that agency's true reasons amounted to unlawful discrimination. The DOI concurred with the administrative judge and adopted the recommended finding of no discrimination. The plaintiff appealed to the EEOC which affirmed the agency's final decision of no discrimination.

### BIA Complaint 94–068 (Natural Resource Specialist, South Dakota)

16. Karl Krueger submitted a letter dated October 6, 1993, stating that he was resigning effective December 11, 1993, from his position as natural resource specialist in the Crow Creek Agency, South Dakota. As a result of this letter, the superintendent of the agency, Frank Joseph, created a vacancy announcement which opened on October 27, 1993.

17. Karl Krueger then submitted a memorandum dated October 26, 1993, requesting the withdrawal of his resignation. Frank Joseph accepted Krueger's request, the resignation was withdrawn, and Krueger continued in the position as natural resource specialist. Frank Joseph sent a memorandum dated November 23, 1993, to the area personnel office asking it to cancel the vacancy announcement. The request was approved, and the vacancy announcement was cancelled effective November 23, 1993.

18. In deciding to accept Krueger's request to withdraw his resignation, Frank Joseph considered only the convenience and cost savings to the government of retaining a qualified employee. Frank Joseph made this decision without ever seeing or learning who had submitted applications in response to the vacancy announcement and without ever knowing that plaintiff was one of the applicants. The personnel specialist who was handling

the applications never learned of the plaintiff's EEO complaints, his age, or the suitability investigation surrounding the plaintiff.

19. On March 1, 1994, the plaintiff filed a complaint with the BIA regarding this position alleging discrimination on the basis of his American Indian race, his age, and reprisal. The plaintiff requested a hearing before an EEOC administrative judge who found no prima facie case of discrimination or reprisal as the agency had canceled the vacancy announcement and as there were no circumstances regarding this action that would give rise to an inference of unlawful discrimination. The DOI concurred with the administrative judge and adopted the recommended finding of no discrimination. The plaintiff appealed to the EEOC which affirmed the agency's final decision of no discrimination.

### BIA Complaint 94–069 (Rights Protection Specialist, Oklahoma)

20. The Anadarko area office in Oklahoma advertised a vacancy announcement for a rights protection specialist during June and July of 1993. Sixteen individuals applied and eight of them, including the plaintiff, were certified as eligible.

21. The area director received the certificate of eligible applicants. The employee who had held this position had taken a buyout leaving the agency with few funds for a replacement. Without ever reviewing the list of eligible applicants and without ever learning that the plaintiff was on the list, the area director decided to cancel the announcement because the agency could not fully fund the position. The decision to cancel the announcement had nothing to do with the plaintiff being an applicant.

22. The plaintiff was notified on December 14, 1993, that management had decided not to fill this position for lack of funding. This position was targeted for abolishment in February of 1995 as part of an agency reorganization. As of June 1996, this position had not been advertised again and had not ever been filled.

23. On March 1, 1994, the plaintiff filed a complaint with BIA regarding this position alleging discrimination on the basis of reprisal. The plaintiff requested a hearing before an EEOC administrative judge who found no prima facie case of reprisal as the agency had canceled the vacancy announcement due to budgetary constraints and as there were no circumstances regarding this action that would give rise to an inference of unlawful discrimination. The DOI concurred with the administrative judge and adopted the recommended finding of no discrimination. The plaintiff appealed to the EEOC which affirmed the agency's final decision of no discrimination.

### BIA Complaint 94–070 (Realty Specialist, Kansas)

24. The plaintiff applied for a realty specialist vacancy in the Horton agency that was open between July 26, 1993, and August 16, 1993. The initial certificate of eligible applicants issued September 20, 1993, for the Horton agency did not include the plaintiff, because he failed to complete his application by not including several required documents. Even thought the vacancy announcement said uncompleted applications would not be considered, the plaintiff was notified and allowed to complete his application, and his name and the names of two other applicants were included on an additional or amended certificate of eligible applicants that was issued to the Horton agency three or four days later. Linda Saunders made no objection to the plaintiff appearing on the list of eligible applicants.

25. Antoinette Houle, the supervisory realty specialist, reviewed the original and amended certificates of eligible applicants and the application packages for the candi-

dates. After conducting this review, Ms. Houle recommended that Linda Saunders select Gilreath Aitkens, a female Indian, who had worked as a realty specialist for the BIA in Palm Springs, California, and who had worked previously at the Horton agency. Linda Saunders concurred with Ms. Houle's recommendation because Ms. Aitken appeared well-qualified by reason of her prior work experience, high recommendation from her California supervisor, and her level of education. Specifically, Ms. Aitken had experience with commercial business leases and the Horton agency had been reviewing more of this type of leases.

26. Antoinette Houle, who had worked as a soil conservationist after the plaintiff left the Horton agency, observed that the positions of realty specialist and soil conservationist are different jobs requiring different skills and experience. Ms. Houle and Ms. Sanders agreed that Ms. Aitkens was the best qualified candidate for the position and that is why they selected her. The plaintiff's age, sex and prior EEO activity had nothing to do with their selection of Aitkens for the realty specialist position.

27. On March 1, 1994, the plaintiff filed a complaint with the BIA regarding this position alleging discrimination on the basis of sex, age and reprisal. The plaintiff requested a hearing before an EEOC administrative judge who found prima facie cases because the agency had selected a younger female and the hiring officials were aware of the plaintiff's EEO activity. The administrative judge, however, found that the agency had articulated legitimate non-discriminatory and non-retaliatory reasons for selecting Aitkens and that the plaintiff had failed to show the reasons were pretextual or the hiring was unlawfully motivated. The DOI concurred with the administrative judge and adopted the recommended finding of no discrimination.

The plaintiff appealed to the EEOC which affirmed the agency's final decision of no discrimination.

### BIA Complaint 95–028 (Surface Reclamation Specialist, New Mexico)

28. The surface reclamation specialist position in the Navajo area office in Gallup, New Mexico, had been vacant for over one year when it was first advertised. This position was responsible for overseeing reclamation of strip-mined lands and required someone with a science background who understood and could apply environmental regulations and who could work with other agencies and coal mining companies to obtain compliance with federal environmental regulations. The supervisor, Genevieve Denetsone, was looking for a "highly skilled person" who could perform the technical aspects of the job when she had the position advertised in 1993.

29. The vacant position was advertised in the months of September of 1993, December of 1993, and June of 1994. The plaintiff applied during the December opening and was certified as qualified, but he was not selected. His application was forwarded during the June opening and again he was not selected. Ms. Denetsone did not select the plaintiff because he had no experience with the reclamation of mined lands, because he was abrasive during the telephone interview, and because his work history and personality did not show him to be someone who would take "a team approach to problem solving and cooperative efforts with other federal agencies." (Govt's Ex. 51). Denetsone did not know the plaintiff, did not know he had filed EEO complaints, and did not consider the age of any applicant in her selection decisions.

30. Ms. Denetsone did not select any of the applicants after the June 1994 opening.

In March of 1995, there was hiring freeze in the BIA. In January of 1996, the vacancy announcement for this position was canceled for budgetary reasons. This position remained vacant in 1996.

31. On April 11, 1995, the plaintiff filed a complaint with the BIA regarding this position alleging discrimination on the basis of race, age and reprisal. The plaintiff requested a hearing before an EEOC administrative judge who found no prima facie case of discrimination as the vacancy was never filled and there are no circumstances regarding the decision not to select the plaintiff that would give rise to an inference of unlawful discrimination. The DOI concurred with the administrative judge and adopted the recommended finding of no discrimination. The plaintiff appealed to the EEOC which affirmed the agency's final decision of no discrimination.

### BIA Complaint 95–028 (Natural Resources Specialist, Washington, D.C.)

32. The position of natural resources specialist in the Office of Trust Responsibilities, Division of Water and Land Resources in Washington, D.C., was advertised as a vacancy in January of 1994. At this time, there was a hiring freeze in the agency but vacancies could be advertised and applications could be accepted and processed. The plaintiff applied for this position and was placed on the certificate of eligible applicants.

33. By letter dated May 24, 1994, the plaintiff was notified that this vacancy was subject to the hiring freeze. The selecting official for this position decided to cancel this vacancy because his office could not financially afford to fill it. By letter dated August 2, 1994, the plaintiff and other applicants were notified that this position was cancelled. The plaintiff's race, age and prior EEO activity had nothing to do with the decision to cancel the position.

34. On April 11, 1995, the plaintiff filed a complaint with the BIA regarding this position alleging discrimination on the basis of race, age and reprisal. The plaintiff requested a hearing before an EEOC administrative judge who found no prima facie case of discrimination as the vacancy was never filled and there are no circumstances regarding the decision not to select the plaintiff that would give rise to an inference of unlawful discrimination. The DOI concurred with the administrative judge and adopted the recommended finding of no discrimination. The plaintiff appealed to the EEOC which affirmed the agency's final decision of no discrimination.

### Venue

Because four of the plaintiff's six individual discrimination claims concern applications for employment outside the State of Kansas, the defendant contends that Title VII venue does not exist here and those claims must be dismissed. The defendant relies on the general rule that when multiple Title VII claims are pleaded in one action, the propriety of venue is determined separately for each claim. Instead of filing a motion to dismiss for improper venue or including it as a defense in his answer, the Secretary filed his answer admitting "that venue in this district is proper." (Dk.8, ¶ 4). The court finds that the defendant's actions constitute a waiver of this defense under Fed.R.Civ.P. 12(h)(1).

### General Discrimination Law

Title VII makes it an unlawful practice for an employer "to fail or refuse to hire ... any individual, ... because of such individual's race, ..., sex," 42 U.S.C. § 2000e–2(a)(1), and "to discriminate against any ... applicants for employment, ..., because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, ..., or participated in any manner in an investiga-

tion, proceeding or hearing under this subchapter," 42 U.S.C. § 2000e–3(a). These prohibitions are made applicable to the United States through 42 U.S.C. § 2000e–16. In 1974, the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA") was amended to cover federal employees. *Villescas v. Abraham,* 311 F.3d 1253, 1257 (10th Cir.2002).

The plaintiff's efforts to allege and prove claims of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, are to no avail. As written, the ADA specifically excludes the United States from the definition of "employer" found at 42 U.S.C. § 12111(5)(B)(i). Consequently, an employee of a federal agency alleging disability discrimination may pursue relief only under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, and 794a. *Hiler v. Brown,* 177 F.3d 542, 544 n. 4 (6th Cir. 1999). Because the ADA and the Rehabilitation Act share standards, definitions and elements, courts have considered the case law interpreting those acts to be interchangeable in analyzing claims under either act. *Hiller v. Runyon,* 95 F.Supp.2d 1016, 1020 (S.D.Iowa 2000); *see Ozlowski v. Henderson,* 237 F.3d 837, 842 (7th Cir. 2001). In short, the Rehabilitation Act prohibits discrimination in employment against disabled persons by federal agencies. *Hiler,* 177 F.3d at 545.

For claims brought under Title VII, ADEA, and the ADA that rely on circumstantial evidence, as the plaintiff does here, the court's "analysis at the summary judgment stage is governed by the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Garrett v. Hewlett Packard Co.,* 305 F.3d 1210, 1216 (10th Cir.2002). This framework entails the following:

> The *McDonnell Douglas* test involves a three-step analysis. First, the plaintiff must prove a prima facie case of discrimination. If the plaintiff satisfies the prima facie requirements, the defendant bears the burden of producing a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext. *See Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1226 (10th Cir.2000).

305 F.3d at 1216.

■ All of the plaintiff's claims allege discriminatory failure to hire. A general prima facie case for such a claim includes the following elements:

> "(i) plaintiff belongs to a protected class; (ii) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." (internal quotation marks and citations omitted) (emphasis added); *Bennett v. Quark, Inc.,* 258 F.3d 1220, 1228 (10th Cir.2001)

*Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1238 (10th Cir.2002) (quoting *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1226 (10th Cir.2000)). The prima facie case raises a rebuttable presumption of unlawful discrimination, as there is "a logical connection between each element of the prima facie case and the inference of discrimination." *Perry v. Woodward,* 199 F.3d 1126, 1135, 1136 (10th Cir.1999), *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000). The prima facie case should eliminate the most common nondiscriminatory reasons for not hiring an ap-

plicant, including lack of qualifications and absence of a vacancy. *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d at 1226–27. Thus, a plaintiff cannot prove the fourth prong if the employer never fills the position for which the plaintiff applies and the vacancy is cancelled or the position is eliminated. *See, e.g., Morgan v. Federal Home Loan Mortg. Corp.,* 172 F.Supp.2d 98, 111 (D.D.C.2001); *Jones v. Tanoue,* 131 F.Supp.2d 220, 222 (D.D.C.2001), *aff'd,* 46 Fed.Appx. 1 (D.C.Cir.2002); *Carter v. Pena,* 14 F.Supp.2d 1, 6 (D.D.C.1997), *aff'd,* 1998 WL 315616 (D.C.Cir. Apr.8, 1998). "No employer can discriminate for failing to fill a position which no longer exists unless the employer eliminated the position as a means of discrimination." *Baltazor v. Holmes,* 162 F.3d 368, 374 (5th Cir.1998) (citation omitted). If the position is filled, then the plaintiff's prima facie case under the ADEA would require proof for the fourth prong that the person hired was younger than the plaintiff. *Ellis v. United Airlines, Inc.,* 73 F.3d 999, 1004 (10th Cir.), *cert. denied,* 517 U.S. 1245, 116 S.Ct. 2500, 135 L.Ed.2d 191 (1996); *See Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1166 (10th Cir.2000) (inference of age discrimination cannot be made if person hired is insignificantly younger than the plaintiff).

A modified prima facie standard is used for reverse sex discrimination claims, because there is no presumed discrimination against historically favored litigants who have sustained an adverse employment action. *See Livingston v. Roadway Express, Inc.,* 802 F.2d 1250, 1253 (10th Cir.1986). The first prong of the prima facie case is changed to require a showing of background circumstances that would support an inference that the employer is one of those unusual employers who discriminates against the majority or a historically favored group. *See Notari v. Denver Water Dep't,* 971 F.2d 585, 588–89 (10th Cir. 1992). A plaintiff also may prove a prima facie case by coming forward with "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.* at 590.

■ To make a prima facie case for a Title VII retaliation claim, the plaintiff must show "that (1) he engaged in protected opposition to discrimination, (2) his employer subjected him to an adverse employment action subsequent to the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." *Pastran v. K–Mart Corp.,* 210 F.3d 1201, 1205 (10th Cir.2000). "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir.2001) (quoting *Burrus v. United Telephone of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982)).

■ A prima facie case under the Rehabilitation Act requires a showing that "(1) [plaintiff] is a handicapped person within the meaning of the Act; (2) she is otherwise qualified for the job; and (3) she was discriminated against because of the handicap." *Woodman v. Runyon,* 132 F.3d 1330, 1338 (10th Cir.1997). A disabled person within the meaning of the Act is any person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B) (1996) (recodified in 1998 as 29 U.S.C. § 705(20)(B)).

If a prima facie case is shown, the burden now shifts to the defendant to articu-

late a facially nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The Tenth Circuit has described this burden in these terms:

> The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. However, the proffered reason for the action taken against the minority employee must be reasonably specific and clear.

*EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir.1992) (citations and footnote omitted). Should the defendant meet this burden, a plaintiff can avoid summary judgment "either by presenting evidence that the employer's reason is pretextual, i.e., unworthy of belief or by otherwise introducing evidence of a discriminatory motive." *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir.2002) (citation omitted).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quotation omitted). In deciding if the plaintiff has made a sufficient showing of pretext, the court "must consider the evidence as a whole." *Danville*, 292 F.3d at 1250.

Mere allegations are insufficient, *Morgan*, 108 F.3d at 1324, and "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment," *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988). The plaintiff's own conclusory opinions about his qualifications and about the employer's motives do not give rise to a material factual dispute. *See Bullington v. United Air Lines*, 186 F.3d 1301, 1318 (10th Cir.1999). The pertinent inquiry at this stage does not focus on whether the employer's "proffered reasons were wise, fair or correct," but looks at whether the employer "honestly believed those reasons and acted in good faith on that belief." *Bullington*, 186 F.3d at 1318 (citation omitted). The courts are not "super-personnel departments" that second-guess employers' business judgments in deciding pretext. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813–14 (10th Cir.2000). "However, '[e]vidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination.'" *Id.* at 814 (quoting *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir. 1996)). Though an employee generally must come forth with evidence showing each of the employer's reasons to be pretextual, there may be instances when the employee's evidence may be relevant in showing several of the employer's reasons to be pretextual. *Tyler*, 232 F.3d at 814.

### BIA Complaint 94–067 (Soil Conservationist, Kansas)

This complaint relates to the plaintiff's application for the vacant position created by his resignation in April of 1991. The Horton agency had not filled this vacancy after advertising within the BIA, and so almost a year and a half after his resignation the plaintiff applied in response to the OPM's advertisement of the position in

August of 1992. Upon learning that the plaintiff's name appeared on OPM's list of qualified applicants, Linda Saunders, the plaintiff's former supervisor and current superintendent of the Horton agency, submitted a written objection to the plaintiff appearing as a qualified applicant. She wrote that the plaintiff had not performed satisfactorily in this position and that he lacked the skills necessary in performing the job as now configured. The OPM sustained the objection, and the plaintiff's name was removed from the list of eligible applicants for the position.[1] Saunders eventually selected Gene Harter, a non-Indian male for the position. Harter is older than the plaintiff.

■ The plaintiff claims he was denied this position because of his race, age, his broken hip and his earlier claim of discrimination. Because the plaintiff is younger than the person hired, he cannot prove a prima facie case of age discrimination. Nor can he establish a prima facie case of disability discrimination, as he has not shown himself to be handicapped as a result of the broken hip and has not proven any causal connection between his broken hip and the adverse employment action. Indeed, the plaintiff offers no proof that Saunders even knew of the plaintiff's broken hip during the relevant time period. As for the claims of race discrimination and retaliation, the facts suffice to prove a prima facie case for each. The plaintiff may rely upon the OPM's initial listing and subsequent listing of the plaintiff as a qualified applicant.

■ The defendant, however, is still entitled to summary judgment on these other claims as it has articulated legitimate busi-ness reasons for objecting to the plaintiff's qualifications. The plaintiff's recent poor work performance in this very position and his insubordinate behavior while on this job are justifiable grounds for Ms. Saunders objecting to the plaintiff as a qualified applicant and for the OPM's decision to sustain this objection initially. That a prior temporary supervisor may have given the plaintiff a satisfactory evaluation does not create a genuine issue of material fact. The plaintiff does not controvert the facts that he engaged in insubordinate behavior and that he had failed to follow the procedures and requirements which Saunders had set for him. The plaintiff's bare allegation and conclusory opinion of other discriminatory motives is not enough to defeat summary judgment. There is nothing to suggest that Ms. Saunders' objection was improper, unusual or unjustified under the circumstances, and considering the difficulty she had in supervising the plaintiff, the reasonableness of her actions stands unrefuted. The plaintiff's claims cannot survive summary judgment without some evidence from which to infer pretext or a discriminatory motive, and he has presented none.

### BIA Complaint 94–068 (Natural Resource Specialist, South Dakota)

■ The plaintiff claims he was denied this position because of race, age, and earlier claims of discrimination. The uncontroverted facts establish that the superintendent of this agency cancelled this vacancy announcement after accepting the employee's request to withdraw his earlier resignation. Because the vacancy was

---

1. As reflected in the administrative judge's decision, when the OPM's Wichita office had the plaintiff's name removed, he appealed this decision and in December of 1993 the OPM's Office of Federal Investigations overturned this decision and directed that the plaintiff's name be considered for any position that he applied for and was qualified to perform. This final OPM ruling occurred after Saunders had hired someone else for the soil conservationist position.

cancelled and no applicant hired, the plaintiff is unable to prove a prima facie case of discrimination or retaliation. There are no circumstances surrounding the superintendent's decision to cancel the vacancy and retain the current employee that raise any inference of an unlawful discriminatory or retaliatory motive. The defendant is entitled to summary judgment on this claim.

### BIA Complaint 94–069 (Rights Protection Specialist, Oklahoma)

■ The plaintiff claims he was denied this position in retaliation for filing a claim of discrimination. The plaintiff does not controvert that for budgetary reasons the vacancy announcement for this position was cancelled and the position was never filled. The plaintiff offers no evidence regarding the circumstances of these decisions that would sustain an inference of an unlawful retaliatory motive. Indeed, the area director made these decisions without ever reviewing the list of eligible applicants and without ever learning that the plaintiff was on the list. Unable to prove a prima facie case of retaliation, the plaintiff's claim is subject to summary judgment.

### BIA Complaint 94–070 (Realty Specialist, Kansas)

■ The plaintiff alleges he was denied this position because of his sex, age, and earlier claim of discrimination. Ms. Saunders made no objection to the plaintiff's name appearing on the list of eligible applicants for this position. Antoinette Houle, supervisory realty specialist for the Horton agency, reviewed the certificates of eligible applicants and recommended that Ms. Saunders select Gilreath Aitkens, a younger female Indian, who had worked as a realty specialist for the BIA in Palm Springs, California, and who had worked previously at the Horton agency.

The plaintiff has not made a prima facie case of sex discrimination as he offers no proof or circumstances from which to infer that the Horton agency is one of those unusual employers who discriminates against the male majority. The plaintiff's speculation or opinion about Ms. Saunders' motives is not sufficient to avoid summary judgment. The court will assume a prima facie case for retaliation, although the temporal proximity is arguably deficient to sustain any inference of a causal connection. The plaintiff is able to prove a prima facie case of age discrimination.

■ The defendant has articulated legitimate, nondiscriminatory reasons for not hiring the plaintiff and selecting Ms. Aitkens for the position of realty specialist. As Ms. Houle testified, the position of realty specialist required different skills and experience than expected of a soil conservationist. Consequently, Ms. Aitkens' experience as realty specialist and specifically her prior work with commercial leases made her more qualified for the vacancy than the plaintiff. In addition, the supervisor in BIA office in the Palm Springs, California, where Ms. Aitkens had worked as a realty specialist, highly recommended her. In contrast, the plaintiff's prior supervisor had proposed a disciplinary suspension for the plaintiff who then resigned in response. It is uncontroverted that Ms. Houle and Ms. Saunders selected Ms. Aitkens because she was the best qualified applicant for the position and that the plaintiff's age, sex and prior EEO activity had nothing to do with their decision to select Ms. Aitkens. The plaintiff comes forward with no evidence from which to infer that these expressed reasons for hiring Ms. Aitkens are pretextual or that there are other unlawful motives behind their hiring decision. The defendant is entitled to summary judgment on this claim.

### BIA Complaint 95–028 (Surface Reclamation Specialist, New Mexico)

The plaintiff alleges he was denied this position because of his race, age, and earlier claim of discrimination. A person working as a surface reclamation specialist was expected to have the ability and skills to oversee the reclamation of strip-mined lands, to understand basic scientific principles, to understand and apply complex environmental regulations, and to work well with other agencies and coal mining companies to obtain compliance with environmental regulations. The plaintiff was considered as an applicant for this vacancy on two different occasions and rejected. The hiring person, Ms. Denetsone, did not select the plaintiff for several reasons. He had no experience with the reclamation of mined lands. He was perceived as abrasive during the telephone interview. His work history did not show he was a person who worked well with team approaches and cooperative efforts. Ms. Denetsone did not hire any of the applicants for this vacancy, and the announcement was canceled for budgetary reasons in 1996.

That the plaintiff was not selected for this position is not enough under the circumstances to create an inference of discrimination. Ms. Denetsone selected none of the applicants and the position was eventually canceled for lack of money. Ms. Denetsone did not know the plaintiff or that he had filed EEO complaints. The court is unable to find any prima facie case of discrimination or retaliation on these facts. Even assuming there was an arguable inference of discrimination, the defendant has articulated a legitimate business reason for not selecting the plaintiff, and this reason stands uncontroverted. Presenting no evidence of pretext or of another discriminatory motive, the plaintiff cannot survive summary judgment on this claim.

### BIA Complaint 95–028 (Natural Resources Specialist, Washington, D.C.)

The plaintiff alleges he was denied this position because of his race, age, and earlier claim of discrimination. When the vacancy for natural resources specialist was advertised, there was a hiring freeze in the agency. This did not prevent the agency from advertising vacancies and accepting and processing applications. The plaintiff's application was received, and his name was placed on the certificate of eligible applicants. Because the office could not afford this position, the director canceled the vacancy. The plaintiff was notified that the vacancy was canceled and later notified that this position had been eliminated.

Because the vacancy was cancelled and no applicant hired for this position, the plaintiff is unable to prove a prima facie case of discrimination or retaliation. The plaintiff offers no evidence of circumstances surrounding the director's decision to cancel the vacancy that raise any inference of an unlawful discriminatory or retaliatory motive. The defendant is entitled to summary judgment on this claim.

IT IS THEREFORE ORDERED that the plaintiff's "motion to reconsolidate (sic) EEOC complaints" (Dk.69) is denied;

IT IS FURTHER ORDERED that the defendant's motion for summary judgment (Dk.64) is granted.